Lawrence MIDDLETON, Plaintiff,

v.

PHILADELPHIA ELECTRIC
COMPANY, Defendant.

Civ. A. No. 93–5897.

United States District Court,
E.D. Pennsylvania.

May 9, 1994.

Avivah R.Z. Pinski, Philadelphia, PA, for plaintiff Lawrence Middleton.

Wendy Schermer, Philadelphia, PA, for defendant Philadelphia Elec. Co.

### *MEMORANDUM*

LOWELL A. REED, Jr., District Judge.

Defendant Philadelphia Electric Company ("PECO") removed this action to this Court from the Court of Common Pleas of Philadelphia County asserting that this Court has subject matter jurisdiction over this action because it is "an action to recover employee benefits or to secure other relief under the terms of an employee benefit plan covered by the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*." Notice of Removal at 2. Given that the notice of removal did not clearly support the asserted basis for subject matter jurisdiction, I issued an Order to Show Cause instructing PECO to file a "memorandum of law and such other documents, as necessary, to [show cause] why the within action should not be

remanded to the state court for lack of subject matter jurisdiction." *See* Order dated November 10, 1993 (Document No. 2).

After reviewing PECO's memorandum of law, plaintiff's response, and PECO's reply, and for the reasons discussed below, I conclude that this Court does not have subject matter jurisdiction over this action because I conclude that ERISA does not apply to plaintiff's claims and thus that plaintiff's claims are governed exclusively by state law.

## I. FACTUAL BACKGROUND

Plaintiff Lawrence Middleton ("Middleton") was an employee at PECO in the Nuclear Group from 1981 until he was terminated in August 1993. In 1993, PECO began a reorganization of the Nuclear Group which included a reduction in force. To those protected employees whose positions would be eliminated, PECO offered a severance pay plan called the Nuclear Voluntary Separation Plan (the "Plan" or "PECO's Plan").[1] *See* Plan, attached to Complaint as Exhibit A(3).

In April 1993, Middleton received a letter from PECO Vice–President Gerald Rainey ("Rainey") which informed him that as a result of the reorganization, his position as Analyst III in the Nuclear Group Programs Branch was being eliminated. *See* Letter of Gerald R. Rainey to Lawrence Middleton, April 15, 1993, attached to Complaint as Exhibit A(1). As a protected employee, however, Middleton was told that he was eligible to receive severance benefits under the Plan because he had been with PECO for more than ten (10) years and because he was in the Professional, Supervisory, and Managerial Plan (the "PSM"). *See* Rainey's Letter; *see also* Plan at 3. Rainey explained that Middleton, and those similarly situated, had two options: They could chose to take advantage of the Plan and receive severance benefits, or they could stay with PECO in a different position. Attached to Rainey's letter was a copy of the Plan and an election form on which Middleton would be required to note his choice.

Specifically, the Plan provided the following severance pay and benefits to Middleton and other protected employees:

★ Lump sum payment equal to three (3) weeks pay for each year of service to a maximum of 18 months.

★ Benefits coverage for a maximum of 18 months or employment in a position that provides benefits in another company, whichever occurs first.

★ Benefits that will be continued are Medical, Dental, Life, and AD & D.

Plan at 1. Those employees who would be eligible to receive the above-mentioned benefits under the Plan were those who:

will have completed 10 or more years credited service and who are in the [PSM] as of (individual's date will be indicated in their personal letter) and who are not assigned as a result of the Nuclear Group reorganization.

Plan at 3.

Rainey's letter also explained that if Middleton were to chose to take part in the Plan, he would be required to sign a release and waiver of all past and present claims against PECO. Middleton had an outstanding discrimination complaint against PECO which was, and is, pending with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. In his letter, Rainey did not state that Middleton would be required to execute such a release and waiver if he chose to stay with PECO and await reassignment. Indeed, the election form attached to Rainey's letter on which Middleton was required to note his choice, stated only that:

[e]mployees electing Option 1 [*i.e.,* the Plan] *must* also submit a signed Nuclear Voluntary Separation Plan Full Waiver and Release of Claims Form to their Employing Officer at the time their Election Form is submitted.

Election Form, attached as Exhibit A(2) to Complaint. Also, the three-page waiver and release of claims, which was attached to Middleton's copy of the Plan, clearly

---

1. This is distinguished from the "Involuntary Separation Plan" which did not apply to Middleton because he was a protected employee.

indicated that it was only to be signed by employees who elected the severance benefits under the Plan.[2]

Ultimately, Middleton declined the Plan and chose to stay with the company. Rainey's letter explained that when another position was identified, Middleton had seventy-two (72) hours to decide whether to accept the reassignment or to elect to take advantage of the severance benefits under the Plan. On June 2, 1993, PECO offered Middleton a position as Junior Analyst. Within seventy-two hours, Middleton accepted the offered position and signed the election form indicating that he did not wish to participate in the Plan.

Soon thereafter, PECO gave him a release and waiver form which was individually tailed to Middleton. The form stated in part:

I, *Lawrence L. Middleton,* for and in consideration of the "HA" level Junior Analyst position, do hereby waive any and all claims which I may have against [PECO], arising out of my employment with the Company, in particular, my charge before the Pennsylvania Human Relations Commission, Docket No. E–62556D.

Full Waiver and Release of Claims, attached to Complaint as Exhibit B. Middleton refused to sign the waiver and release form and was never placed in the position of Junior Analyst.

On July 29, 1993, Middleton was offered another position, as Analyst III. He was given a new packet of materials with a cover letter. The packet contained an election form that differed from the form in the original packet which had accompanied Rainey's letter of April 15, 1993 in that the election form itself contained a waiver of claims "in consideration for being offered a job rather than being laid off." Election Form, attached to Complaint as Exhibit C. Because Middleton believed that the original agree-ment, as embodied in Rainey's letter, did not require a waiver of claims if an employee chose to remain with PECO and accept another job assignment, he refused to sign the election form. Middleton was never placed in the position of Analyst III and was ultimately terminated on August 13, 1993.

Middleton brought this action for breach of contract, promissory estoppel or detrimental reliance, breach of the covenant of good faith and fair dealing, and for benefits pursuant to the Pennsylvania Wage Payment and Collection Law. PECO removed the case to this Court stating that the first three counts of Middleton's complaint were preempted by ERISA,[3] and that, therefore, this Court had subject matter jurisdiction over this action. The issue addressed below is whether ERISA indeed preempts the first three counts, because if not, this Court has no subject matter jurisdiction, and this case must be remanded to the Court of Common Pleas of Philadelphia County.

## II. DISCUSSION

■ Section 514(a), the ERISA preemption provision, provides that "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The words "relate to" have been construed very expansively. A law "relates to" an employee benefit plan " 'if it has a connection with or reference to such a plan[,]' . . . 'even if the law is not specifically designed to affect such plans, or the affect is only indirect,' and even if the law is 'consistent with ERISA's substantive requirements.' " *District of Columbia v. Greater Washington Bd. of Trade,* —— U.S. ——, ——, 113 S.Ct. 580, 585, 121 L.Ed.2d 513 (1992) (citations omitted). ERISA preemption provides for removal to federal court of lawsuits involving employee benefit plans.[4]

---

**2.** The opening paragraph of the waiver and release form attached to the Plan began:

I, ___, for and in consideration of the three (3) weeks salary per year of service up to 78 weeks maximum, . . . hereby waive any and all claims which I may have against the Philadelphia Electric Company

. . . .

Full Waiver and Release of Claims, attached to Complaint as Exhibit A(4)–1.

**3.** The Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

**4.** Although federal courts are generally directed only to the allegations in the complaint when determining whether there is subject matter jur-

Because ERISA is the sole basis for federal subject matter jurisdiction in this case, however, I must now decide whether PECO's severance pay plan is an employee benefit plan as defined by ERISA.

 ERISA does not govern all employee benefits plans. It only applies to (1) employee pension benefit plans and (2) employee welfare benefit plans. PECO does not argue, nor could it, that the plan at issue in this case is an employee pension benefit plan. Instead PECO argues that the Plan is an employee welfare benefit plan, and that Middleton's state law claims for breach of contract, promissory estoppel and breach of the covenant of good faith and fair dealing "relate to" the Plan. Middleton, on the other hand, argues that the Plan is not an employee welfare benefit plan, and that even if it were, Middleton's claims do not "relate to" the Plan because Middleton never participated in the Plan.

ERISA defines an "employee welfare benefit plan" as

> any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title [which includes "severance or similar benefits"] (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). Severance pay plans may under certain circumstances constitute "employee welfare benefit plans" under ERISA. *Massachusetts v. Morash*, 490 U.S. 107, 116, 109 S.Ct. 1668, 1669, 104 L.Ed.2d 98

(1989). However, in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987), the Supreme Court held that a severance pay plan is only an employee welfare benefit plan if it requires the establishment and maintenance of a separate and ongoing administrative scheme. At issue in *Fort Halifax* was a Maine statute that required certain employers, on either the relocation or closing of a plant, to give terminated employees who had worked in the plant three or more years a severance payment of one week's pay for each year of employment. *Id.* at 5, 107 S.Ct. at 2214. The Court ruled that preempting the Maine statute "would not further the purpose of ERISA pre-emption," *id.* at 8, 107 S.Ct. at 2216, and that "the Maine statute in no way raises the type of concerns that prompted pre-emption," *id.* at 11, 107 S.Ct. at 2217. The Court noted that the goal of ERISA's preemption provision is to provide a single set of administrative practices for benefit plans in order to avoid a patchwork scheme of regulation. *Id.* at 11, 107 S.Ct. at 2217. However,

> [t]his concern only arises ... with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employers's obligation. It is for this reason that Congress pre-empted state laws relating to plans, rather than simply to *benefits*.

*Id.* at 11–12, 107 S.Ct. at 2217 (emphasis in the original). Because the Maine statute required only a one-time, lump-sum payment triggered by a single event, it did not create an employee benefit plan for which ERISA's uniform practices were necessary.

 In cases applying *Fort Halifax* to severance pay plans or statutes, the characterization of these payments as governed by ERISA has hinged on the amount of employer discretion involved in providing payment. *See, e.g., James v. Fleet/Norstar Financial Group, Inc.*, 992 F.2d 463, 468 (2d Cir.1993); *Gray v. Quaker Fabric Corp.*, 809 F.Supp. 163, 167 (D.Mass.1992), *aff'd*, 6 F.3d 849

---

isdiction, the Supreme Court has held that where a defendant appropriately pleads the defense of ERISA preemption, the suit is necessary federal in character, and, therefore, the suit is removable

to federal court. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 67, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987).

(1993). In other words, courts have held that a plan or statute requires the establishment and maintenance of a separate and ongoing administrative scheme only if the plan administrator must determine employee eligibility based on subjective criteria.

For example, in *Pane v. RCA, Corp.*, 868 F.2d 631 (3rd Cir.1989), the Third Circuit affirmed the district court's ruling that a severance plan set up to retain company executives during a merger was an ERISA plan. The lower court relied on the fact that, under the severance plan, the employee was entitled to benefits only if he or she was terminated *for reasons other than for cause.* Thus, "the circumstances of each employee's termination [had to] be analyzed in light of [certain] criteria, and an ongoing administrative system constituting an ERISA plan exist[ed]." *Pane,* 667 F.Supp. at 171.

Similarly, in *Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993), the Ninth Circuit held that a seventeen month "executive parachute" program was an ERISA plan because payment was only provided if the company employer were sold and the buyer failed to offer the executive *"substantially equivalent employment."* Because the program administrator was required to determine, in his or her judgment, whether a covered employee's new job was "substantially equivalent" to his old job, the Court held that the program required "a case-by-case, discretionary application of its terms." *Id.* at ——, 113 S.Ct. at 1323. In other words, unlike application of the statute in *Fort Halifax,* there was simply "no way to carry out that obligation with the unthinking, one-time, nondiscretionary application of the plan administrators[.]" *Id.; see also Gray,* 809 F.Supp. at 166–67 (Massachusetts severance pay statute preempted by ERISA because, as in *Pane,* plan administrator had to decide whether employee's termination was involuntary in order to determine eligibility for benefits);

Conversely, in *Fontenot v. NL Industries, Inc.,* 953 F.2d 960, 961–63 (5th Cir.1992), the Fifth Circuit held that a "golden parachute" program providing severance pay for executives who were terminated within two years

of a change of control was not an ERISA plan because eligibility for the program was based on objective criteria. Thus, the Court held that for the employer to make payments under the plan, it was not required to establish a separate and ongoing administrative scheme. The Court reached this conclusion despite the fact that the severance pay plan provided for a three year continuation of certain benefits to the eligible executives. The Court distinguished *Pane* on the basis that the circumstances of each employee's eligibility in *Pane* had to be analyzed in terms of certain subjective criteria which did require the establishment of an administrative scheme.

Since *Pane,* the Third Circuit has once more been called upon to consider whether a severance pay plan was an ERISA-governed employee welfare benefit plan. In *Angst v. Mack Trucks, Inc.,* 969 F.2d 1530 (3d Cir. 1992), the Court determined that ERISA did not preempt claims for breach of a buyout plan under which the employer agreed to provide departing employees with a lump-sum cash payment and a year of continued benefits in exchange for their voluntary departure. The buyout plan was expressly limited to seventy-seven (77) employees, but a total 144 members applied for benefits. Because the plan was so limited, eligibility was based exclusively on seniority. Several of the 144 members who did not meet the seniority cutoff brought the action in federal court. In holding that the plan was not governed by ERISA, the Court distinguished its earlier decision in *Pane* stating that *"Pane* involved a plan which required the creation of an administrative apparatus that would analyze each employees' situation in light of particular criteria." *Id.* at 1539. In *Angst* no such discretionary analysis of eligibility was required—the seventy-seven most senior members were included, and the rest were not.

In a case where the severance pay plan was similar to PECO's Plan, the district court held that the plan was not preempted by ERISA. *McLemore v. United States Fidelity & Guaranty Company,* 829 F.Supp. 192 (S.D.Miss.1993). The plan in *McLemore* provided lump-sum payments to employees

who were on the payroll for more than twenty (20) hours per week as of the date of their termination. The payments were based on the number of years the employees had worked with the company. Also, the plan provided for the continuation of certain other employee benefits, including medical insurance, dental insurance, pensions, and savings and investment plan participation. The defendant argued that an ongoing administrative scheme was required because the plan administrator was required to calculate the employees' eligibility, years of service, whether or not they had any unused vacation days, floating holidays or personal days, and based on the foregoing, determine the amount of severance pay. The Court, however, held that the employer's "need to make such simple arithmetical calculations and clerical determinations did not require the establishment of the type of ongoing administrative scheme which *Fort Halifax* directs is governed by ERISA." *Id.* at 197.[5] Citing *Angst*, the Court further held that it is not relevant that the severance pay plan also provided for the continuation of other employee benefits. *Id.* at 197 (citing *Angst*, 969 F.2d at 1539); *see also Fontenot*, 953 F.2d at 961.

As the employer argued in *McLemore*, PECO claims that its Plan is an ERISA plan because eligibility "depended upon years of service and severance payment amounts depended upon each individual employee's years of service." PECO's Reply Memorandum at 3. PECO also argues that its Plan required the establishment of an administrative scheme because it was a "multi-phased reduction program operating in several stages[.]" PECO's Reply Memorandum at 3. Finally, PECO argues that an ongoing administrative scheme was required by the Plan because protected employees could re-

ject the Plan and choose to remain with the company in another position.

I find no factual basis for PECO's conclusory statement that its Plan was "multi-phased" nor that its Plan requires the establishment of an ongoing administrative scheme. After reviewing the Plan, I find that once an employee chose to participate in the Plan, the calculations required by the plan administrator were similar to those required in *McLemore* and *Angst*. Unlike the programs in *Pane* and *Bogue*, PECO's plan administrator was not required to analyze employees' eligibility in light of certain subjective criteria. The plan administrator only had to determine eligibility based on objective criteria and calculate severance benefits according to a simple formula. For example, Middleton was eligible to participate in the Plan because he had been with PECO for more than ten years and he was a PSM employee. If had chosen the Plan, he would have received severance benefits of three weeks pay for each year of service with PECO to a maximum of eighteen (18) months.

PECO appears to argue that when looking at the Plan, the Court must also look to the other options offered protected employees during the reorganization of the Nuclear Group. However, it is clear to me that the fact that eligible employees could reject the Plan and choose to remain with PECO in another position, as did Middleton, is not relevant when considering the *character* of the Plan. The Plan itself is straightforward, and its administration requires no discretionary analysis of either the employees' eligibility or the calculation of severance benefits for those eligible employees who chose to participate in the Plan.

Just as the severance pay programs in *Fort Halifax*, *Fontenot*, *McLemore* and *Angst* were not deemed plans within the

---

5. *See also James*, 992 F.2d at 467 (the fact that employees had different termination dates, different eligibility, and that payments had to be calculated individually, did not require the establishment of an ongoing administrative scheme); *Wells v. General Motors Corp.*, 881 F.2d 166, 176 (5th Cir.1989), *reh'g denied, en banc*, 887 F.2d 1083 (5th Cir.1989), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990) (the fact that employer made payments pursuant to a

"Voluntary Termination of Employment *Plan*" and that the employees received a benefit do not convert the plan into an ERISA plan). *But see Garrett v. Veterans Memorial Medical Center*, 821 F.Supp. 838, 840 (D.Conn.1993) (in case with facts similar to *James*, Court relied partly on district court decision in *James* later reversed on appeal and decided that severance pay plan was governed by ERISA).

meaning of ERISA, so too I conclude that PECO's Plan is not an ERISA plan. Accordingly, Middleton's state law claims are not preempted by ERISA, and this Court does not have jurisdiction over this case.[6]

## III. CONCLUSION

For the reasons discussed above, I find that this Court does not have subject matter jurisdiction over this action. Accordingly, I will order that the Clerk of Court remand this action to the Court of Common Pleas of Philadelphia County.

---

6. Because I have concluded that PECO's Plan is not an ERISA plan, I need not decide whether Middleton's state law claims "relate to" an ERISA-governed employee benefit plan.