Jerry C. McCLELLAND, Plaintiff,

v.

Robert C. GRONWALDT, Individually and as Agent for Mobil Oil Corporation, Mobil Oil Corporation, and National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Defendant.

No. 1:95–CV–931.

United States District Court,
Eastern District of Texas,
Beaumont Division.

Nov. 16, 1995.

458

Glen W. Morgan, Reaud Morgan & Quinn, Beaumont, TX, for Jerry C. McClelland.

Gerald Wayne Riedmueller, Lipscomb Norvell, Jr., Benckenstein Norvell & Nathan, Beaumont, TX, for Robert C. Gronwaldt.

Amy Dunn Taylor, Michael Thomas Powell, Dean Schaner, Robert L. Levy, Timothy T. McInturf and Lisa A. Dreishmire, Haynes & Boone, Houston, TX, for Mobil Oil Corporation.

Alison H. Moore, Harrison Henry Yoss, Robert Wellenberger, Allison Moore, Thompson Coe Cousins & Irons, Dallas, TX, for National Union Fire Insurance Company of Pittsburgh, PA.

## MEMORANDUM OPINION

COBB, District Judge.

### BACKGROUND

In December 1992, the Plaintiff Jerry McClelland filed suit in the 58th Judicial District, State District Court of Texas. Plaintiff alleged a breach of the duty of good faith and fair dealing, violation of Article 21.21 of the Texas Insurance Code, negligent handling claims, and intentional infliction of emotional distress arising from improper handling of Workers' Compensation claims and conspiracy. The Plaintiff sought certification of a class of similarly situated plaintiffs and certification was finalized on October 10, 1995. On July 26, 1995, the Plaintiffs sought and received a Temporary Restraining Order from the state district court which prohibited the Defendants from contacting potential members of the certified class with respect to releasing their claims. There was no Collective Bargaining Agreement (CBA) in existence which could have been affected at that time. This order expired of its own terms 10 days thereafter.

On September 27, 1995, another TRO was sought and granted along with the Plaintiffs application for a temporary and ultimately a permanent injunction. This case was removed the day before the hearing on the temporary injunction, which was the 20th day after the injunction was sought. There was a CBA which was dated September 1, 1995 which probably became effective September 17, 1995.

For the past several years Mobil has been undergoing a nationwide restructuring. As part of this process, Mobil revised and implemented an Enhanced Separation Benefits Package (ESBP) which allows employees who separate from the company for reasons other than cause to be eligible for certain benefits. The ESBP is available to non-union workers. (Defendant's Supplemental Brief in Response to Motion to Remand, p. 7). As part of the restructuring of the Beaumont plant, Mobil made the ESBP available to non-union employees who voluntarily separated from the company.

For union members, separately negotiated agreements provide benefits for those employees who volunteer to separate from the company. Mobil successfully negotiated such an agreement with the members of the Oil, Chemical, and Atomic Workers International Union (OCAW or Union). The benefits provided to these employees are similar to those provided under the ESBP. However, there is nothing in this agreement which speaks to the administration of the program. The Memorandum of Agreement (MOA) between Mobil and the Union was signed on September 1, 1995, became effective either on that date or on September 17, 1995, and the election period under the MOA expires on November 17, 1995.

Both the ESBP and the MOA require employees to sign Separation Agreements which contain broad waiver-of-claim language.[1] Under both programs, the broad language makes it difficult to know exactly which claims are being waived by the individual signing the Separation Agreement. In implementing its restructuring plan, Mobil is seeking waivers from some employees who are also members of the certified class. On September 27, 1995, the Plaintiffs applied for another temporary restraining order and temporary and permanent injunction and the Defendants removed to this Court asserting that the matter was preempted by either the Employee Retirement Income Security Act (ERISA) or the Labor Management Relations Act (LMRA) or both.

## TIMELINESS OF REMOVAL

■ Plaintiffs assert that Defendants have made an untimely removal and that this Court must remand the case to the state district court. This is incorrect. The first date the case became removable was September 27, 1995 when the Plaintiffs sought a temporary restraining order from the state court "preventing Mobil from continuing with this particular program to the extent it requires releasing causes of action that the plaintiffs may have." *Plaintiffs Motion for Temporary Restraining Order*, p. 1. Until then, there was not a CBA or an ERISA plan which was being affected by state court action or state law. The removal was filed October 17, 1995, well before the 30 day deadline imposed by 28 U.S.C. 1446. The notice of removal was timely filed and all defendants have timely joined in the removal.

---

1. The waiver-of-claim language in both Separation Agreements reads:

"In exchange for the Separation [/Plan] Benefit[s] described above, to which Employee is not otherwise entitled, Employee forever releases and discharges Mobil Corporation, Mobil Oil Corporation, their officers, directors, agents, employees, subsidiaries, and affiliates from all claims, liabilities, and lawsuits arising out of Employee's employment or the termination of that employment and agrees not to assert any such claim, liability, or lawsuit. This includes any claim under the Age Discrimination in Employment Act or under any other federal, state, or local statute or regulation relating to employment discrimination. It also includes any claim under any other statute or regulation or common law rule relating to Employee's employment or the termination of that employment. This Agreement does not have any effect with respect to acts or events occurring after the date upon which Employee signs it. This Agreement does not limit any benefit to which Employee is entitled under Mobil's qualified retirement or savings plans."

## ANALYSIS

 Where removal of a state court action is based on the presence of a federal question, the federal question generally must appear on the face of the complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 391, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). The defendant's assertion of a federal defense is normally an insufficient basis for removal. Id. at 393, 107 S.Ct. at 2430. The specific exception to this general rule is where an area of state law has been completely preempted by federal law. *Id.* Claims which concern ERISA and the LMRA are considered to be preempted under this particular rule. See *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (Preemption by Section 301 of the LMRA); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (ERISA preemption). This Court must determine whether either ERISA or the LMRA are implicated by the Plaintiffs Motion for Temporary Restraining Order.

## ERISA

### Is the Severance Plan an ERISA Plan?

 Whether the Defendant's incentive attrition plans (the ESBP for non-union employees and the MOA for union) are governed by ERISA turn on whether they are employee benefit plans within the meaning of 29 U.S.C. § 1003(a). Severance pay plans may constitute ERISA plans. See *Massachusetts v. Morash*, 490 U.S. 107, 116, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989). However, the fact that a claim may involve "benefits" is not conclusive that an ERISA "plan" is involved. See *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7–8, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987). "In *Fort Halifax*, the Supreme Court held that an employee benefit 'plan' encompasses only those benefits that require the establishment and maintenance of a separate and ongoing administrative scheme." *McLemore v. United States Fidelity & Guaranty Co.*, 829 F.Supp. 192, 195 (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). The Supreme Court held that a one-time, lump-sum payment triggered by a single event requires no administrative scheme. *Fort Halifax*, 482 U.S. at 12, 107 S.Ct. at 2217–18.

A review of the cases applying *Fort Halifax* to severance pay plans or statutes, demonstrates that the characterization of these arrangements as governed by ERISA has hinged on the amount of employer discretion involved in providing payment. See, e.g., *James v. Fleet/Norstar Financial Group, Inc.*, 992 F.2d 463, 468 (2d Cir.1993); *Gray v. Quaker Fabric Corp.*, 809 F.Supp. 163, 167 (D.Mass.1992), aff'd, 6 F.3d 849 (1993). Courts have generally held that a plan requires the establishment and maintenance of a separate and ongoing administrative scheme only if the plan administrator must make discretionary decisions based on subjective criteria.

For example, in *Pane v. RCA, Corp.*, 868 F.2d 631 (3rd Cir.1989), the Third Circuit affirmed the district court's ruling that a severance plan set up to retain company executives during a merger was an ERISA plan. The lower court relied on the fact that, under the severance plan, the employee was entitled to benefits only if he or she was terminated for reasons other than for cause. Thus, "the circumstances of each employee's termination [had to] be analyzed in light of [certain] criteria, and an ongoing administrative system constituting an ERISA plan exist[ed]." *Pane*, 667 F.Supp. at 171. See also *Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir.1992), cert. denied, 507 U.S. 1031, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993) (ERISA plan exists if plan administrator must determine "substantially equivalent employment" to continue eligibility under plan.); *Gray*, 809 F.Supp. at 166–67 (Massachusetts severance pay statute preempted by ERISA because, as in Pane, plan administrator had to decide whether employee's termination was involuntary in order to determine eligibility for benefits).

Conversely, in *Fontenot v. NL Industries, Inc.*, 953 F.2d 960, 961–63 (5th Cir.1992), the Fifth Circuit held that a "golden parachute" program providing severance pay for executives who were terminated within two years of a change of control was not an ERISA

plan because eligibility for the program was based on objective criteria. Thus, the Court held that for the employer to make payments under the plan, it was not required to establish a separate and ongoing administrative scheme. The Court reached this conclusion despite the fact that the severance pay plan provided for a three year continuation of certain benefits to the eligible executives. The Court distinguished *Pane* on the basis that the circumstances of each employee's eligibility in *Pane* had to be analyzed in terms of certain subjective criteria which did require the establishment of an administrative scheme. *See also James,* 992 F.2d at 467 (the fact that employees had different termination dates, different eligibility, and that payments had to be calculated individually, did not require the establishment of an ongoing administrative scheme) *Angst v. Mack Trucks, Inc.,* 969 F.2d 1530 (3d Cir. 1992) (Plan was not an ERISA plan because sole decision criteria was seniority); *Wells v. General Motors Corp.,* 881 F.2d 166, 176 (5th Cir.1989), reh'g denied, en banc, 887 F.2d 1083 (5th Cir.1989), cert. denied, 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990) (the fact that employer made payments pursuant to a "Voluntary Termination of Employment Plan" and that the employees received a benefit do not convert the plan into an ERISA plan); *Middleton v. Philadelphia Electric Co.,* 850 F.Supp. 348 (E.D.Pa.1994) (plan eligibility based on objective criteria and benefits calculation according to simple formula) *McLemore v. United States Fidelity & Guaranty Company,* 829 F.Supp. 192 (S.D.Miss.1993) (simple arithmetical and clerical determinations do not create an ERISA plan).

■ In the case at bar, the ESBP supplied by Mobil is an ERISA plan. Under the plan, the administrator is required to make a determination that an employee was not dismissed for cause. This is the same determination which the *Pane* court held constituted an ERISA plan. In addition, the ESBP requires ongoing administration even after the employee has separated from Mobil "to

determine and monitor whether participants remain eligible to receive benefits after the employee begins receiving benefits." Affidavit of Thomas D. Sunila, *Defendant's Response to Plaintiff's Motion to Remand,* p. 3. It is clear to this Court that the ESBP requires discretionary action by the plan administrator well beyond making a one-time, lump-sum payment and is therefore an ERISA plan.

■ The MOA, on the other hand, is not an ERISA plan. The MOA itself makes no provisions for the administration of the separation benefits which would require discretion on the part of a plan administrator. There is nothing before this Court which would indicate that the administration of the plan is governed by any program or procedure other than what is presented in the MOA. The affidavits provided by Mobil are restricted to the administration of the ESBP and are not applicable to the MOA. The MOA, standing alone, is not an ERISA plan.

### Do the State Law Claims "Relate To" an ERISA Plan?

Plaintiffs further argue that even if the ESBP and the MOA are ERISA plans, the actions the Plaintiffs seek do not "relate to" the plans within the meaning of the statute.[2] The essential question is whether the waiver signed by the Plaintiffs and later used by the Defendants as a defense against state law claims implicates ERISA.

■ The Supreme Court has noted that the phrase "relate to" should be given broad meaning and that a state law relates to a benefit plan "if it has a connection with or reference to" such an ERISA plan. *Pilot Life Ins. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987). To be preempted, a state law does not have to be specifically designed to affect employee benefit plans. *Id.* However, the ERISA preemption clause has its limits. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law

**2.** Section 514(a), the ERISA preemption provision, provides that "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

'relates to' the plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 n. 21 (1983).

While there is no general rule which determines the issue, several courts have examined the issue in similar ways. In *Perkins v. Time Insurance Co.,* 898 F.2d 470 (5th Cir.1990), the court held that a claim of fraudulent inducement to surrender an existing policy in order to participate in an ERISA plan was not preempted by ERISA because the claim "relates to" the plan only indirectly. ERISA does not preempt state law claims that do not affect the relations among the principal ERISA entities: the employer, the plan fiduciaries, the plan, and the beneficiaries. *Perkins* at 473. Even where the principal entities are affected, it is their relationship as plan beneficiaries that must be affected. "While ERISA governs the beneficiary relationship, state law governs the employee-employer relationship." *Eurine v. Wyatt Cafeterias, Inc.,* No. 3–91–0408–H, 1991 WL 207468 (N.D.Tex., Aug. 21, 1991). When a claim does not arise out of the parties' ERISA relationship, but rather out of the employee-employer relationship, the claim does not "relate to" an ERISA plan. *Gibson v. Wyatt Cafeterias,* 782 F.Supp. 331, 335 (E.D.Tex.1992). Further, when there is no claim for benefits and the liability for the damages sought does not depend upon the existence of an ERISA plan, there is no ERISA preemption. *Id.* See also *Hartle v. Packard Electric,* 877 F.2d 354, 356 (5th Cir.1989). In essence, where the state law claims do not seek benefits under an ERISA plan and do not depend on the plan to establish liability, the state claims do not "relate to" an ERISA plan.

In the case at bar, the Plaintiffs' state law claims do not depend on the provisions of or the benefits provided in an ERISA plan. The state claims sound in state law and are not based on ERISA. It is only the presence of broad waiver-of-claim language included in the Separation Agreement which even approaches an ERISA plan. Were there no ERISA plan, the Plaintiffs would still maintain their causes of action. In fact, if the Separation Agreement provided no benefits and was not an ERISA plan, there would be no discussion of ERISA whatsoever. The mere fact that this waiver is being signed in consideration of benefits does not implicate ERISA.

While the underlying state tort claims in this case do not necessarily implicate an ERISA plan, the Plaintiffs' Motion for Temporary Restraining Order seeks to enjoin the operation and implementation of an ERISA plan by operation of state law. Included in each Separation Agreement is a proposed waiver of claims against Mobil. The language of these waiver provisions is broad and the Plaintiffs have asked the state district court to enjoin Mobil from implementing its plan by issuing a "restraining order preventing Mobil from continuing with this particular program to the extent it requires releasing causes of action that the plaintiffs may have." *Plaintiffs Motion for Temporary Restraining Order,* p. 1. To the extent that the Plaintiffs' application for state court injunctive relief would halt the administration of the plan or the payment of benefits thereunder, the Plaintiffs' action now rests properly in federal court. However, because the state tort claims themselves do not arise under an ERISA plan, those claims may be properly in this court through the exercise of supplemental jurisdiction as discussed below.

### LMRA

In addition to the ERISA concerns, the Defendants have removed this case based on Section 301 of the LMRA. The Defendants aver that the MOA, executed September 1, 1995 and effective September 27, 1995, which was negotiated with and adopted by the OCAW Union and Local 4–243, is a collective bargaining agreement and that any interpretation thereof would necessarily require that state court action be preempted by the LMRA. Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect

to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185(a).

■ In *Lingle,* the Supreme Court held that section 301 preempts an application of state law "only if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410, 423. The Court of Appeals for the Fifth Circuit has stated that section 301 preemption occurs when resolution of a dispute is " 'substantially dependent upon analysis of the terms' of the collective bargaining agreement." *Wells v. General Motors Corp.,* 881 F.2d 166, 173 (5th Cir. 1989) (citing *Lueck,* 471 U.S. at 220, 105 S.Ct. at 1915, 85 L.Ed.2d 206), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990). A plaintiff's state law claims will not be preempted, even when they are "intertwined" with a CBA, so long as they are not "inextricably intertwined" with it. *Id.* at 175 n. 20.

It is undisputed that the MOA is a collectively-bargained instrument. The MOA itself makes reference to this fact. In *Thomas v. LTV Corp.,* 39 F.3d 611, 618–19 (5th Cir. 1994), the Fifth Circuit held that a separately negotiated instrument between union and management "should be analyzed for preemption purposes just as if it was a CBA." Just as in *Thomas,* the separate document in the case at bar makes reference to the original CBA and resolves the question of which document controls if there is a conflict between the original CBA and the separate agreement. This court finds that the MOA (and the Separation Agreements signed according to MOA provisions) as negotiated between the Union and Mobil is a collectively-bargained agreement and will be analyzed accordingly for Section 301 purposes.

■ The temporary restraining order sought by the Plaintiffs necessarily requires the state court to make an interpretation of the MOA and the relevant Separation Agreements (hereinafter CBA).[3] In order for the state court to justifiably restrain Mobil from implementing its plans, the state court must determine that the Plaintiffs are suffering some type of harm. Whether the broad waiver-of-claim language will waive the claims of the McClelland class members will require the state court to engage in an impermissible interpretation of the CBA. Clearly the resolution of this issue is "inextricably intertwined" with the interpretation of the CBA and is properly in federal court. Furthermore, the underlying state claims are inextricably intertwined by the same analysis. Resolution of those claims will necessarily depend on the language of the CBA and a state district court cannot make that interpretation.

### Workers' Compensation and Section 1445(c)

While jurisdiction of certain state law claims may be proper when they are preempted by ERISA and the LMRA, section 1445(c) of the removal statutes provides a bar to the removal of certain types of claims. 28 U.S.C. § 1445(c) provides that "[a] civil action in any State court arising under the workmen's compensation laws of such state may not be removed to any district court of the United States." It is clear from the Plaintiffs' Second Amended Petition that the issues in this case stem from the alleged inappropriate handling of workers' compensation claims. This would seem to prohibit the removal of those causes of action. However, the patina of worker's compensation burnished upon the Plaintiff's claims does not mislead this Court.

■ Plaintiffs allege a breach of the duty of good faith and fair dealing, violation of Article 21.21 of the Texas Insurance Code, negligent handling claims, intentional infliction of emotional distress arising from improperly handling Workers' Compensation claims and conspiracy. Despite Plaintiffs' urgings, no cause of action for workers' com-

---

**3.** Plaintiffs counsel admits that the MOA and the attachments are a CBA:
 Court: The program is a negotiated CBA. I don't think there's any question but that it's a CBA. Do you?

Mr. Morgan: No, sir.
Transcript of Oral Argument, October 27, 1995, p. 21.

pensation benefits or penalties are presently in this suit. It is true that claims of retaliatory discharge under chapter 451 of the Texas Labor Code (formerly Article 8307c of the Workers Compensation statutes) do arise under workers' compensation. *See Jones v. Roadway Express, Inc.*, 931 F.2d 1086, 1091–1092 (5th Cir.1991). Such retaliatory discharge claims could not be removed to this court, even if preempted by ERISA. *Addison v. Sedco Forex, U.S.A.*, 798 F.Supp. 1273 (N.D.Tex.1992). On the other hand, none of the claims presented by the Plaintiffs arise under workers' compensation. *See Patin v. Allied Signal, Inc.*, 69 F.3d 1 (5th Cir.1995); *see generally Spearman v. Exxon Coal U.S.A., Inc.*, 16 F.3d 722 (7th Cir.1994). Since there is no bar to removal of the Plaintiffs' claims, this Court now considers the question of supplemental jurisdiction.

## Supplemental Jurisdiction

Because this Court has subject matter jurisdiction over the preempted claims, this Court may exercise supplemental jurisdiction over all state-law claims, pursuant to 28 U.S.C. § 1367.[4] The Court also notes that section 1367(c) provides in pertinent part that district courts may decline to exercise supplemental jurisdiction over a claim, if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. None of these elements are present in this case. There are no novel issues of state law. The Court will have continuing jurisdiction of any interpretations of the CBA which may be necessary and therefore the state claims do not predominate federal ones. Exception 3 has no application and this Court sees no compelling reason to decline jurisdiction. In fact, splitting the issues between federal ones and state ones would be difficult and judicially inefficient.

## Other Matters

The Defendants have evinced a desire to seek declaratory judgment in interpreting the broad waiver-of-claim language included in the Separation Agreements under the ESBP and the MOA. The Plaintiffs and the Defendants have both made representations that the language at issue does not waive claims like those put forth by Mr. McClelland. There is evidence in the record the language is meant only to waive any claims arising out of such employment discrimination laws as the ADEA. At this point, however, that question is not before this court. If, in the course of litigation, an interpretation of CBA language is required, this court will make that determination at that time. Until the issue is raised, however, this court does not consider the matter.

Finally, the Court is cognizant of the November 17, 1995 election period deadline. This matter has been under advisement since October 27, 1995 until this date. In the interest of fairness and justice to those individuals who may or may not have elected to be in either the ESBP or the MOA, this Court orders Mobil to extend the election period deadline until November 30, 1995. This will provide those individuals affected approximately the same amount of time to exercise their rights under the plans as existed on October 27, 1995. Furthermore, the 45 day consideration period provided for signing the release and separation agreement is to be tolled from October 27, 1995 until the date of this opinion.

Pursuant to the order of this date entered in this matter, the motion for remand is Denied.

---

4. 28 U.S.C. § 1367 provides in pertinent part, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ..."