**Ada ACKNER, et al., Plaintiffs,**

v.

**LENOX, INC., Defendant.**

**No. 90 CIV. 2136 (RO).**

United States District Court,
S.D. New York.

Jan. 29, 1992.

Andrew Berger, Lowenthal, Landau, Fischer & Ziegler, P.C., New York City, for plaintiffs.

Kenneth J. McCulloch, Grotta, Glassman & Hoffman, New York City, for defendant.

### OPINION AND ORDER

OWEN, District Judge:

ArtCarved (Bridal) was a jewelry business headquartered in New York City, and was formerly a division of defendant Lenox, Inc. In April, 1988, Lenox sold ArtCarved to CJC Holdings, Inc.; in August, 1988, CJC announced that part of the ArtCarved operations would be relocating to Austin, Texas over the ensuing 6–9 months. CJC offered to relocate all employees who wished to relocate rather than be terminated. Employees who chose not to relocate received severance pay, receiving credit for all their years at ArtCarved,

including the time during which it was owned by Lenox.

Plaintiffs Ada Ackner and 145 other individuals, all employees of ArtCarved, initiated this action on March 28, 1990 against Lenox. The first of the severance pay claims they assert is based on a provision in an ArtCarved policy manual dated January 1, 1982 that they claim ArtCarved had in effect as of the time of its sale in 1988. Under this claim, the plaintiffs assert an entitlement to severance pay of approximately $440,000. The second claim refers to a special severance pay agreement that occurred in July, 1986, when ArtCarved terminated approximately 25 people as part of the liquidation of the former Keepsake Diamond Division of Lenox. The plaintiffs here allege that some of these 25 people received two weeks pay for each year of service; on that basis, they claim an entitlement to approximately $2.25 million dollars. Plaintiffs claim that ArtCarved maintained a written severance plan within the meaning of ERISA, 29 U.S.C. § 1002(1)(b) *et seq.*, and that they were thus entitled to severance pay from Lenox because Lenox had sold the ArtCarved Division in which they worked. Following the sale, the buyer decided to relocate the company to Texas; the employees whose jobs were moved to Texas were offered the opportunity to relocate at the buyer's expense, and those who chose not to do so were paid some sum of money giving them credit for their years of service to the company.

Plaintiffs claim that they were terminated from the Lenox payroll when their division was sold, so they should receive severance pay despite the fact that they continued to work at ArtCarved after its sale. They argue that under ArtCarved's severance policy, unemployment was not a precondition of severance. Plaintiffs claim that ArtCarved had a severance plan dating back to the mid–1970's, revised in 1981, and that the Plan applied to every employee involuntarily terminated without cause. Plaintiffs claim that ArtCarved's practice of paying severance to every employee involuntarily terminated without cause constitutes a plan under ERISA, and that Lenox failed to comply with ERISA obligations with respect to the plan. Defendants moved to dismiss and for summary judgment, and plaintiffs cross-moved for summary judgment.

In its motion to dismiss and for summary judgment, Lenox notes that all the plaintiffs in this case except one fit into one of three categories: (a) they are still employed at ArtCarved but are seeking severance pay from Lenox because Lenox sold ArtCarved; (b) they chose to leave ArtCarved rather than relocate to Austin and have already received severance pay from CJC for all their years of service with ArtCarved, but are now seeking duplicative severance pay from Lenox; (c) they voluntarily left ArtCarved or have died subsequent to the sale of ArtCarved.

Lenox argues that the plaintiffs have failed to state a claim and that Lenox had no severance plan. Since it was Lenox who sold the division, the relevant severance policies are those of Lenox, rather than ArtCarved. The plaintiffs have submitted no evidence to indicate that Lenox was ever aware of the disputed manual or that they utilized it in the sale of any division. Furthermore, officers of ArtCarved, Authement, Weber and Pecora, all acknowledged that many of the policies and practices described in this 1982 handbook were not followed, and that there were never any written amendments added by ArtCarved to keep the manual current. They contend that there is no plan covered by federal law under which plaintiffs can claim entitlement to severance pay, and that some of the plaintiffs are barred by having voluntarily elected to take benefits that required them to transfer to the company that purchased the subsidiary in which they worked. The affidavits of ArtCarved's officers indicate that they had no knowledge of any company severance pay policy; rather, decisions were made on a fact-specific basis as needed. Lenox maintains that the ArtCarved officers failed to notify Lenox of the alleged 1982 severance plan, or that this plan was affected by the Keepsake liquidation in July, 1986. When Lenox requested information relating to severance agreements from the officers of ArtCarved

in 1987 as sale was being contemplated, no response was offered. The ArtCarved officers never told Lenox that they believed any severance plan was in effect. These same officials now contend that a severance plan had been in effect continuously since 1982.

■ Lenox argues that even if ArtCarved maintained a severance plan, severance pay is an unvested benefit under ERISA, and an employer may change, establish or eliminate a severance pay plan when it desires to do so. An unfunded severance plan is an "employee welfare benefit plan" under ERISA. *Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2d Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991). Welfare benefits are subject to much looser controls than are pension plans. Severance pay, part of welfare benefits, is an unvested interest on the part of the employee. An employer "has no continuing obligation to provide severance benefits; under ERISA, the employer has the right at any time to amend or terminate a severance pay plan." Since the employer has the right under ERISA to amend or eliminate a severance benefit plan at any time, "*a fortiori* it may do so in the context of the sale of a part of its business as a going concern." *Reichelt* at 430. In fact, several circuits have suggested that with respect to employees who continue comparable employment with the purchaser of the business, supplementing their salary checks from the purchaser with severance payments from the prior employer would bestow a windfall, because it would award severance pay to persons who never changed their jobs and were never out of work. *Sejman v. Warner–Lambert Co.*, 889 F.2d 1346, 1350 (4th Cir. 1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 43, 112 L.Ed.2d 19 (1990); *accord Lakey v. Remington Arms Co.*, 874 F.2d 541, 545 (8th Cir.1989); *Sly v. P.R. Mallory & Co.*, 712 F.2d 1209, 1211 (7th Cir.1983); *Independent Ass'n of Publishers' Emp. v. Dow Jones & Co., Inc.*, 671 F.Supp. 1365, 1368 (S.D.N.Y.1987).

■ Lenox argues that it maintained a consistently-applied policy of not paying severance pay to employees of a division or a subsidiary when that division or subsidiary was sold and the employees were offered the opportunity of continued employment by the purchaser. In an affidavit sworn to by Stephen Lichtenstein, Lenox's General Counsel since October 1976, this policy was elaborated and confirmed, and in fact Lichtenstein noted that there has been no situation since 1976 in which Lenox ever paid severance pay when it sold an operating division and the employees of that division were offered the opportunity for continued employment. Lenox had no written severance policy at any time; any time that severance payments were made upon the sale of a division of Lenox, those payments were individually structured for the particular sale and were not used as models or precedent for any future sales. All the Lenox officers involved in the Keepsake sale to which plaintiffs repeatedly refer and upon which they tenaciously rely testified that this sale involved a one-time severance arrangement. The Keepsake liquidation plans relied upon no established policy, but instead represented a unique plan. Thus, no severance plan within the meaning of ERISA existed.

As the Supreme Court held in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12, 107 S.Ct. 2211, 2218, 96 L.Ed.2d 1 (1987), "a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." The employer incurs no obligation whatsoever to pay benefits on a regular basis through any one-time payments. Once this single obligation is fulfilled, the employer has no responsibilities that continue at any time into the future, so the payment can not be considered a "plan" under ERISA. *Fort Halifax* at 12, 107 S.Ct. at 2217–18.

In fact, only one employee from ArtCarved was not hired by CJC. The sale agreement's Amendment No. 2 had a clause eliminating whatever severance pay policy may have been arguably still extant. Lenox represents that CJC retained all the ArtCarved employees except for two people in the same jobs at the same pay after the

sale, and that the two who were not hired by the buyer received salary continuation of two weeks' pay for each year of service. Also, Lenox argues that the decision to relocate to Texas had not been made prior to the sale, contrary to the plaintiffs' allegations. Lenox notes that the employees whose jobs were moved to Texas were offered the opportunity to relocate at buyer's expense and to retain their jobs, and that some 87 people who are now plaintiffs chose not to relocate and received salary continuation pay totaling $857,384, and that another large number remained in the same jobs in New York and are still employed. .

Plaintiffs fail to present any evidence to corroborate their allegations that Lenox had a severance pay plan in effect at any time prior to its sale of ArtCarved; the 1982 manual has not been shown to have ever been implemented by Lenox, and the provisions of the Keepsake sale in 1986 have not been shown to have been anything other than a one-time agreement. Therefore, Lenox's motion for summary judgment is granted and the action is dismissed.

So ordered.