Janet GARRETT

v.

## VETERANS MEMORIAL MEDICAL CENTER.

Civ. No. 3–92–288 (WWE).

United States District Court,
D. Connecticut.

April 23, 1993.

Judy Duncan Rintoul, David S. Rintoul, Rintoul & Rintoul, Rocky Hill, CT, for plaintiff.

Alison L. Bonds, Barry J. Waters, Gregory C. Davis, Murtha, Cullina, Richter & Pinney, New Haven, CT, for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff, Janet Garrett, brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The Defendant, Veterans Memorial Medical Center ("VMMC"), has moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the motion will be denied.

### Facts

Plaintiff Janet Garrett was hired by Meriden–Wallingford Hospital, the predecessor in interest to VMMC, in 1979. In 1989, she became Business Manager of the Division of Mental Health and Substance Abuse. In the summer of 1990, Garrett told her supervisor, Frederick Morrison, that she wanted to take a year off to travel. Although VMMC's Leave of Absence Policy provided that the "Hospital may not be able to guarantee that an employee's position will be held vacant for the duration of the approved leave," Morrison stated that he would hold her job for her during her leave of absence, subject to financial conditions at the hospital. Relying on Morrison's statement, Garrett applied for and was granted a one year leave of absence. She left work in September on vacation time, and began her leave of absence in October.

In January, 1991, VMMC initiated downsizing plans. The downsizing was discussed at an administrative team meeting, at which Morrison reported that in order to meet budget constraints, sixty full-time equivalents ("FTEs") would have to be eliminated. An FTE is equal to one full time position, but may be comprised of one full-time employee or several part-time employees whose hours total one full time position. Garrett's position was one of the positions targeted for accomplishing the sixty FTE reduction.

In April, 1991, the Final Down–Sizing Guidelines ("Guidelines"), under which the sixty FTE reduction would be accomplished, were issued. The Guidelines prescribed three methods of eliminating positions: voluntary early retirement, attrition, and a combined severance option and reassignment pool for displaced workers ("Severance Plan"). The Guidelines stated that "employees whose positions have been identified for reduction, but who do not qualify for early retirement will be offered the option of accepting a severance package or membership in the reassignment pool."

In June, 1991, VMMC began operating the reassignment pool. According to the Guidelines, all employees who were part of the sixty FTE reduction and who did not qualify for early retirement were eligible for severance or membership in the reassignment pool. On June 14, VMMC sent a letter to employees eligible for the reassignment pool. The letter stated that the pool would include employees whose positions "are to be eliminated." While Garrett's name appears in a June 12th summary of the FTE reduction and while she appears to meet the Guidelines' definition of an employee eligible to participate in the reassignment pool, VMMC did not allow her to participate. The pool operated until December 1991, when the last members in the pool were placed.

Garrett returned to the United States in September, 1991, and learned that her position had been eliminated. Although Morrison had mailed a letter to Garrett on April 22, 1991 informing her of her discharge, Garrett did not receive the letter until her return. After learning that she was out of a job, Garrett found out about the Severance Plan. When she requested that she be allowed to participate in the plan, VMMC refused her request. Subsequently, Garrett commenced this action seeking reinstatement and damages.

### Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In deter-

mining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

■ After careful review, resolving all ambiguities and drawing all reasonable inferences in favor of Garrett, summary judgment must be denied. A threshold issue in this case is whether VMMC's Severance Plan is an ERISA plan. VMMC contends that its plan is not an employee welfare benefit plan as defined by the statute.

Severance benefit plans generally are covered by ERISA, since they are expressly included in the definition of "employee welfare benefit plan." *See* 29 U.S.C. § 1002(1); *see also Bradwell v. GAF Corp.,* 954 F.2d 798, 800 n. 1 (2d Cir.1992) ("it is well settled that severance pay policies are employe[e] welfare benefit plans within the meaning of ERISA"). The Supreme Court in *Fort Halifax Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), however, carved out an exception to the general rule that severance plans are ERISA plans. In *Fort Halifax,* the Court held that a single severance payment paid upon the occurrence of a single event did not constitute an ERISA plan because such a payment did not involve any administration and therefore could not be considered a "plan." 482 U.S. at 12, 107 S.Ct. at 2218.

■ Subsequent case law has determined that the *Fort Halifax* exception is narrow. A plan is an ERISA plan if it has a "minimal, ongoing administrative scheme." *District of Columbia v. Greater Washington Board of Trade,* —— U.S. ——, —— n. 2, 113 S.Ct. 580, 584 n. 2, 121 L.Ed.2d 513 (1992). For example, in *James v. Fleet/Norstar Financial Group, Inc.,* Civ. No. 2–91–124 (PCD) (D.Conn. July 27, 1991), the court held that a one-time offer of sixty-days of severance pay in lieu of the sixty-day notice of plant closing required by the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, et seq., involved sufficient administration to constitute an ERISA plan. The court reasoned that an administrative procedure was required for determining the differ-

ent termination dates of each employee and the different amounts due each employee under the plan. Similarly, in *Pane v. RCA Corp.,* 868 F.2d 631 (3rd Cir.1989), the court held that a severance plan adopted to encourage executives to stay pending a merger involved sufficient administration to be considered an ERISA plan.

*Ackner v. Lenox, Inc.,* 782 F.Supp. 267, 269 (S.D.N.Y.1992), which VMMC cites, can be distinguished. In *Ackner,* there was a one-time, lump-sum payment to employees of a former division of the company. The court held that the company had no obligation to continue that payment to employees of other divisions of the company. In this case, the plaintiff claims that she is entitled to participate in a plan created for the employees affected by the sixty FTE reduction because she was one of the employees affected.

In addition, the Plan in the instant case required substantially more administration than the severance plans in *Ackner* and *Fort Halifax.* It was governed by official Guidelines. VMMC had to (1) make a factual determination as to which employees had their positions eliminated, (2) create and maintain records of which employees had chosen the severance option and which had chosen membership in the reassignment pool, (3) calculate each severance payment individually and make appropriate deductions for social security and withholding taxes, (4) track the employees who entered the reassignment pool, and (5) decide whether a second severance offering would be made to employees who did not find an alternate position from participation in the reassignment pool. Thus VMMC's Severance Plan required an administrative scheme and, therefore, is an ERISA plan.

■ VMMC next contends that Garrett is not a "participant" entitled to receive benefits under the Severance Plan. A "participant" is an employee "who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). VMMC contends that Garrett was never eligible to receive a benefit under the Severance Plan because she was not one of the seventeen people included in the June 14th notification or offered choices under the plan. However, the Guidelines under which the Severance Plan was administered have a

definition of eligible employees that is broad enough to include Garrett. Further, a June 12th summary of the Severance Plan included Garrett as one of the employees affected by the downsizing and presumably covered by the Severance Plan. Thus, there is a genuine issue of material fact as to the terms of the Severance Plan and whether Garrett is a covered participant. Summary judgment is, therefore, inappropriate on this issue.

VMMC argues that even if the Severance Plan is an ERISA plan, Garrett has failed to state a claim of interference under Section 510 of the statute. Section 510 provides that it is unlawful for any person to discriminate against a participant "for the purpose of interfering with the attainment of any right to which [the] participant may become entitled under the plan." 29 U.S.C. § 1140. Garrett claims that VMMC interfered with her attainment of a right to receive severance pay by refusing to pay her benefits upon her termination and by discriminating against her by providing severance benefits to all other employees affected by the sixty FTE reduction.

VMMC contends that even if Garrett was entitled to benefits under the Guidelines, the June 14th notification letter amended the Severance Plan. VMMC relies on *Deeming v. American Standard, Inc.,* 905 F.2d 1124 (7th Cir.1990) for the proposition that it legitimately changed its Severance Plan and did not discriminate against plaintiff. Rather, plaintiff happened to be affected by the amendment. Because there is a dispute as to whether the June 14th letter actually amended the Severance Plan, the issue of whether Garrett has a claim of discrimination cannot be resolved on summary judgment.

Finally, because plaintiffs ERISA claims remain, VMMC's argument that Garrett's pendent state law claims should be dismissed for lack of jurisdiction is moot.

### Conclusion

For the reasons set forth above, the Motion for Summary Judgment [22–1] is DENIED.