William J. LAVERTY, Plaintiff,

v.

SAVOY INDUSTRIES, INC., and John Selzer, and John R. Gioioso as fiduciaries of the Savoy Industries, Inc., Employee Benefit Plan, Defendants.

No. 89 Civ. 3728(DNE).

United States District Court, S.D. New York.

Feb. 4, 1997.

Holm Krisel & O'Hara, New York City (Andrew M. Krisel and William J. Placke, of counsel), for plaintiff.

---

Baer Marks & Upham, New York City (Deborah A. Skakel, of counsel), for defendants.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

Currently before the Court is defendants' motion for summary judgment dismissing plaintiff's first cause of action, pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the following reasons, defendants' motion is granted.

## BACKGROUND

Plaintiff William J. Laverty ("Laverty" or "plaintiff") had been an employee and officer of defendant Savoy Industries, Inc. ("Savoy") since 1975. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment on the First Cause of Action of the Complaint, *Laverty v. Savoy Indus., Inc.*, 89 Civ. 3728 ("Dfts. Memo") at 2 (April 27, 1995)); (Affidavit of William J. Laverty, *Laverty v. Savoy Indus., Inc.*, 89 Civ. 3728 ("Laverty Aff.") ¶ 3 (May 4, 1995).) In the spring of 1982, Laverty and Savoy negotiated an individual agreement pertaining to Laverty's future with Savoy. (Dfts. Memo at 2); (Plaintiff's Statement Pursuant to Local Rule 3(g), *Laverty v. Savoy Indus., Inc.*, 89 Civ. 3728 ("Pltf. 3(g) Stmt.") ¶¶ 2–5 (May 4, 1995)); *see generally* (Laverty Aff.) Laverty and Savoy signed this Agreement on July 28, 1982. (Employment/Consulting Agreement between Savoy Industries, Inc., and William J. Laverty, *Laverty v. Savoy Indus., Inc.*, 89 Civ. 3728 ("the Agreement") (July 28, 1982).)

The Agreement states that Savoy "believes that it is in its best interest to assure the continued services of Mr. Laverty on the terms and conditions hereinafter set forth," *id.* at 1, then lists these terms and conditions in three "Articles". Article I, titled "EMPLOYMENT," sets forth the then-current compensation arrangement as consideration for Laverty's continued services. *Id.* Art. I(1). Specifically, Article I sets forth the term of Laverty's employment under the Agreement, *id.* Art. I(2), the "compensation for services rendered" under the Agreement, *id.* Art. I(3)(A), the formula by which this compensation was to increase during subsequent years, *id.* Art. I(3)(C), and the reimbursement of Laverty's business-related travel and entertainment expenses, such as company car and credit cards. *Id.* It further states that, during the term of his employment under the Agreement, Laverty was "entitled to receive or participate in all other fringe benefits, such as medical and hospital plans, profit-sharing plans and pension plans, which [Savoy] may generally make available to its executive employees...." *Id.* Article I also establishes the nature of Laverty's duties as "an executive employee" of Savoy. *Id.* Art. I(4). Article I further provides for the amount of payments to be made in the event of Laverty's illness, disability, incapacity, *id.* Art. I(5), or death. *Id.* Art. I(6). Finally, Article I states that, "beginning January 1, 1983, Laverty shall reduce his services to [Savoy]" and adhere to the following reduced-work schedule: during 1983, four days per week for 80% salary; during 1984, three days per week for 60% salary. *Id.* Art. I(7)(A)(B). During this period of "reduced services," Laverty was considered "to be an employee of [Savoy] and [was] entitled to receive all benefits of employment...." *Id.* Art. I(7)(c).

Article II of the Agreement, entitled "CONSULTING," provides for a change in Laverty's status with Savoy. It states that he "shall retire from his employment on July 28, 1984, and shall thereupon act as a consultant to the Company." *Id.* Art. II(1). This article then sets forth the amount of the "consulting fee" to be paid to Laverty, *id.* Art. II(2)(A), and the formula by which such fee was to increase in subsequent years for the balance of Laverty's "actuarial life." *Id.* Art II(2)(B). This section further provides that, as a consultant, Laverty was entitled to the same or similar medical and life insurance that he had received while an employee, *id.* Art. II(2)(E), and to reimbursement of all travel and business expenses incurred in the performance of his duties. *Id.* Art. II(2)(G). Article II also establishes the amount of the consulting fees to be paid to Laverty by Savoy in the event if Laverty's physical or mental incapacity, *id.*, as well as in the event of his death. *Id.* Art. II(2)(C), (H). In addition, Article II sets forth the method by

which Savoy was to make all payments due under this section. *Id.* Art. II(D). For so long as he was receiving the consulting fee, Laverty was to remain a consultant to Savoy. *Id.* Art. II(2)(G).

Article III of the Agreement is headed "MISCELLANEOUS," and includes a covenant not to complete which governed Laverty's actions both as an employee and as a consultant. *Id.* Art. III(2). The non-compete covenant provides that Laverty

> will not directly or indirectly own or control an interest in (except as a passive investor owning less than five (5%) percent of the equity securities of a publicly owned company) or be an employee of or be associated with any individual partnership, joint venture, corporation or other business entity directly or indirectly engaged anywhere in the United States in any business competing with the business carried on by [Savoy] or any of its subsidiaries prior to the date of Mr. Laverty's retirement.

*Id.* Violation of this provision would result in the immediate termination of Laverty's right to the consulting fee and other benefits provided to him as a consultant. *Id.* Art. III(1); Art. II(2)(F).

Article III further states that "the only grounds upon which [Savoy] may terminate this Agreement and its obligations to Mr. Laverty hereunder are if Mr. Laverty willfully breaches [the covenant not to compete] or is guilty of willful and material malfeasance or misfeasance...." *Id.* Art. III(1). It also provides that the Agreement "supersedes and replaces any and all present written or oral agreements of employment between the parties, hereto, and all such agreements are hereby deemed cancelled, revoked and of no further force or effect." *Id.* Art. III(4). Finally, Article III states that the "agreement constitutes the whole agreement between the parties hereto and there are no terms other than those stated herein." *Id.* Art. III(6).

Savoy's Board of Directors unanimously approved the Agreement at a meeting held on August 26, 1982. (Dfts. Memo at 5.) Through August 1984, Savoy paid Laverty his salary as employee and officer as required by the Agreement. *Id.* at 6. From August 1984, through November 1988, Laverty received his monthly checks from Savoy, as well as his medical and life insurance benefits. *Id.;* (Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment on the First Cause of Action of the Complaint, *Laverty v. Savoy Indus., Inc.,* 89 Civ. 3728 ("Pltf. Memo") at 3 (May 5, 1995).) According to plaintiff, on or about December 1988, Savoy unilaterally terminated its payments to Laverty. (Pltf. Memo at 3.)

Laverty filed the instant suit on May 30, 1989, alleging several contractual causes of action, as well as claims against Savoy and three of its present and former directors for supposed violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Complaint, *Laverty v. Savoy Indus., Inc.,* 89 Civ. 3728 ("Complaint") (May 22, 1980).) Laverty's ERISA claim, the only claim presently before this Court, hinges on the theory that the Agreement is an "employee benefit plan" under ERISA, *id.* ¶ 8, that Laverty is entitled to retirement benefits under this plan, *id.* ¶¶ 9–12, and that defendants have failed to provide Laverty with his benefits, rendering them liable for breach of fiduciary duty. *Id.* ¶¶ 13–14. Laverty seeks a judgment declaring that he is entitled to pension benefits under the Agreement, as well as various fees and costs associated with defendants' alleged breach and plaintiff's costs of bringing this action. *Id.* ¶¶ 15–20.

In response to Laverty's ERISA argument, defendants counter that the Agreement is an individually-negotiated personal services contract, and that "[w]hatever ambiguities may exist in the reach of ERISA's mandate, it does not extend to an individually negotiated personal services contract whose stated purpose is to provide a compensation arrangement for the continued services of Mr. Laverty...." (Dfts. Memo at 2.) Accordingly, defendants seek summary judgment on this cause of action because, "[a]s a matter of law, ... Plaintiff's ERISA claim cannot stand." *Id.*

## DISCUSSION

Pursuant to Rule 56, summary judgment is appropriate where "the pleadings, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC.*, 867 F.Supp. 262, 265 (S.D.N.Y.1994), and the party may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The existence of a genuine issue of material fact depends on both the genuineness and the materiality of the issues raised by the motion. *See Scottish Air*, 867 F.Supp. at 266. To evaluate a fact's materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). As the Second Circuit has noted, "all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988); *see also Celotex, 477* U.S. at 330 n. 2, 106 S.Ct. at 2556 n. 2.

The substantive law governing this Court's resolution of the instant motion is ERISA. Congress passed ERISA in order to protect employees' benefits from misuse or mismanagement by requiring that certain "safeguards be provided with respect to the establishment, operation, and administration of [employee benefit] plans." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15, 107 S.Ct. 2211, 2219, 96 L.Ed.2d 1 (1987) (quoting 29 U.S.C. § 1001(a)); *Janover v. Bernan Foods, Inc.*, 901 F.Supp. 695, 699 (S.D.N.Y. 1995). Determining whether a claim is covered by ERISA requires an examination of whether a "plan" exists as defined by the ERISA statute. *Janover*, 901 F.Supp. at 699.

■ ERISA covers both "employee welfare benefit plans" and "employee pension benefit plans." 29 U.S.C. § 1002(1). "[A] 'plan, fund, or program' under ERISA is established if from the surrounding circumstances, a reasonable person can ascertain benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." *Grimo v. Blue Cross/Blue Shield of Vermont*, 34 F.3d 148, 151 (2d Cir.1994) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (*en banc*)). The statute lists several characteristics essential to the establishment of an ERISA plan.

■ For example, "[a] plan protected by ERISA ... must utilize an administrative scheme because ERISA is necessarily concerned with the regulation and administration of plan funds." *Janover*, 901 F.Supp. at 699; *see Fort Halifax*, 482 U.S. at 15, 107 S.Ct. at 2219 ("The statute ... presumes that some sort of administrative activity is taking place."); *Garrett v. Veterans Mem. Med. Ctr.*, 821 F.Supp. 838, 840 (D.Conn. 1993); *McQueen v. Salida Coca–Cola Bottling Co.*, 652 F.Supp. 1471, 1472 (D.Colo. 1987). It is also essential that the employee contribute to any fund that would serve as the source of accrued benefits. 29 U.S.C. § 1053(a)(1)–(3); 1054(c). In addition, plan assets must be held in trust, 29 U.S.C. § 1103(a), and the plan must name fiduciaries to control or manage the operation or administration of the benefit funds, to defray the expenses, or to invest or diversify plan assets. 29 U.S.C. §§ 1102(a), 1104(a).

■ Upon examination of the entire Agreement between Laverty and Savoy, this Court finds that the parties simply entered into an employment contract, and did not create an employee welfare or pension benefit plan. Two findings support this conclusion. First, both the language and the substance of the Agreement make clear that the parties' intentions were to formalize their employee-employer relationship. For example, the document itself is titled "Employment/Consulting Agreement," and the two

articles pertaining to Laverty's duties under the Agreement are "EMPLOYMENT" and "CONSULTING." *See generally* (Agreement.) The introduction of the Agreement avers that its purpose is "to assure the continued services of Mr. Laverty...." *Id.* at 1. Moreover, the terms of the Agreement establish that all fees and benefits due Laverty were part of a present compensation arrangement as consideration for his continued service to Savoy. *Id.* Art. I(3)(A), (C); Art. II(2)(A), (B), (G). Furthermore, Savoy possessed the right to terminate the Agreement either if Laverty performed his duties under the Agreement with willful and material misfeasance or malfeasance, or if he breached the non-competition clause. *Id.* Art. III(1)–(2); Art. II(2)(F). *See generally Jervis v. Elerding,* 504 F.Supp. 606, 609 (C.D.Cal.1980).

Second, the Agreement contains none of the provisions which normally attend that creation and maintenance of an ERISA plan. The Agreement contains no administrative scheme for regulation and administration of plan funds. It names no fiduciaries to control or manage the operations and administration of funds to be paid out under its terms. It further makes no arrangement for placing any assets in trust. In addition, the plan fails to require plaintiff to contribute to any fund that would serve as the source of accrued benefits, or to specify the basis on which plaintiff's deferred contributions were to be made. *See Janover,* 901 F.Supp. at 699–700; *McQueen,* 652 F.Supp. at 1472–73;

This Court observes that the parties' respective papers do not raise any genuine question of material fact regarding the existence of the Agreement, or its terms. Accordingly, this Court finds that defendants are entitled to summary judgment on count one of plaintiff's Complaint, pursuant to Rule 56.

## CONCLUSION

IT IS HEREBY ORDERED THAT defendants' motion for summary judgment on Count One of plaintiff's Complaint is GRANTED.

IT IS FURTHER ORDERED THAT Count One of plaintiff's Complaint is DISMISSED.

SO ORDERED.