**Robert A. MORMILE, Jr., Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, a Certain Retirement Incentive Plan Offered to Robert Mormile, Metropolitan Life Insurance Company Retirement Plan and The Metlife Temporary Disability Plan, Defendants.**

**No. 3:97CV1509(WWE).**

United States District Court,
D. Connecticut.

March 1, 2000.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff Robert Mormile, a thirty year employee of defendant Metropolitan Life Insurance Company ("Metlife"), brings this action alleging violations of the Employee Retirement Income Security Act ("ERISA"), breach of contract and promissory estoppel. Pending is the defendants' motion for summary judgment [Doc. # 21] on all five counts of the plaintiff's complaint.[1] For the following reasons the defendants' motion will be granted as to the plaintiff's ERISA claims in Counts Three, Four and Five. The Court need not rule on the state law claims set forth in Counts One and Two.

## FACTS

During all the relevant times, the plaintiff was an Account Representative employed by Metlife in its office in Guilford, Connecticut. As an Accountant Representative, the plaintiff developed a client base to whom he sold insurance and related products.

### Disability

In May 1996, the plaintiff commenced a leave of absence claiming "recurrent major depressive disorder," and submitted a claim along with supporting documentation and information to MetDisability. MetDisability is the entity which administers the Metlife Temporary Disability Plan. By letter dated August 8, 1996, a case management specialist for MetDisability notified the plaintiff that his disability benefits had been terminated on July 12, 1996, because according to Metlife's guidelines, the expected length of disability payments for major depression is only 2 to 6 weeks, and neither the plaintiff nor his physician

Judy Duncan Rintoul, David S. Rintoul, Glastonbury, CT, for plaintiff.

Thomas F. Maxwell, Jr., Pullman & Comley, Bridgeport, CT, for defendants.

1. The five counts of the plaintiff's complaint are:
   1. Breach of Contract; 2. Promissory estoppel; 3. Failure to pay disability benefits in violation of ERISA section 502(a)(1)(B); 4. Failure to pay an individual retirement incentive benefit plan in violation of ERISA Section 502(a)(i)(B); 5. Failure to pay pension benefits pursuant to an amended plan in violation of ERISA Section 502(a)(i)(B).

submitted any information that would warrant an extension. Metlife, however, paid disability payments to the plaintiff for two weeks ending July 12, 1996. In addition, the letter stated:

> There is insufficient medical evidence to support a fully disabling condition preventing you from performing your own occupation as an Account Representative beyond July 12, 1996.

After the plaintiff received notice of the denial, he submitted additional documentation in support of his claim. MetDisability subsequently referred the plaintiff's claim to Network Medical Review Company ("NMR") for an independent review.

On September 30, 1996, an NMR psychiatrist submitted a report affirming MetDisability's determination to terminate the plaintiff's benefits. Specifically, the report stated that

> there is no indication in the progress notes or in the records . . . that suggest to the claimant that he stop working, or that refraining from working would be therapeutic. . . .
>
> There is no evidence in the record that he went to his employer to explain this illness or to obtain special circumstances in his work situation during the acute part of his illness. It is noted that he did not require hospitalization, which also speaks to the severity of his illness. . . .
>
> He, thusly, should not be considered disabled for his job after July 13, 1996.

*Oral Agreement*

On September 9, 1997, the plaintiff returned to work from his leave of absence. At that time, the plaintiff was in jeopardy of falling below established production requirements.[2] Philip Rogerson, the plaintiff's manager, informed the plaintiff that

he had two options: (1) retire or (2) increase sales to a satisfactory level or face termination.

The plaintiff alleges that he began discussing retirement with Rogerson and the possibility of retaining the right to continue servicing all of his clients. Specifically, he alleges that he discussed whether he could keep his complete book of business, receive commissions on renewals by his existing clients, and continue selling to them during his retirement.

On February 11, 1997, the plaintiff tendered his resignation to Metlife by letter. On May 14, 1997, the plaintiff signed a Retired Representative 100 Ret. Agreement ("Agent 100"), which permits retired agents to continue to service immediate family members. Plaintiff did not sign an Agent 100 Plus Agreement.[3] The Agent 100 Plus Agreement permitted representatives to retain all personally written premium paying business. In order to obtain an Agent 100 Plus, a retiree must be 65 years old or 62 years old with 20 years of service. Also, Plus Agreements were generally awarded based on a pre-retirement productivity of at least 40,000 in annual commissions. When the plaintiff retired, his commissions were below the annual 40,000 threshold. The plaintiff stopped working on May 14, 1997, and was not permitted to retain his entire book of business.

During the plaintiff's retirement discussions, the plaintiff alleges that the defendants made oral representations and promises that culminated in a contract and/or a pension plan permitting him to retain and service his entire book of business, and not just immediate family members.

---

**2.** In 1996, the plaintiff had already been placed on probation for failing to meet required production quotas.

**3.** On Form 100–E, Statement of In–Force to Be Retained At Retirement explains both the

Agent 100 and Agent 100 Plus Agreement. The plaintiff selected the box next to the Agent 100 agreement and signed the form on May 14, 1997.

## DISCUSSION

Summary judgment pursuant to Fed. R.Civ.P. 56(c) is appropriate if the court finds, after viewing the facts in the light most favorable to the nonmoving party, that there is no genuine issue of material fact pertaining to a given issue and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The burden is on the moving party to show that no material facts are in dispute. *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). A dispute over a material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). The court's role in considering summary judgment is not to resolve disputed issues, but only to determine the existence of factual issues to be tried. *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986).

In the context of a motion for summary judgment, disputed issues of fact are not material if the moving party would be entitled to judgment as a matter of law, even if the disputed issues were resolved in favor of the nonmoving party. Such factual disputes, however genuine, will not preclude summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992).

*ERISA Disability Benefit*

■ Count Three of the plaintiff's complaint is the first claim of an ERISA violation. It alleges that Metlife violated ERISA when it failed to pay the plaintiff disability benefits in accordance with his disability plan when the plaintiff took a leave of absence in 1996.[4] Metlife argues that it is entitled to judgment as a matter of law, because its decision to deny the claim for benefits was reasonable under the applicable standards of judicial review.

■ A denial of benefits challenged under Section 1132(a)(1)(B) is reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When the underlying plan vests the administrator with discretionary authority to determine eligibility for benefits, the court will not disturb the administrator's conclusion unless it is "arbitrary and capricious." *Pagan v. NYNEX,* 52 F.3d 438, 441 (2d Cir.1995). A court may overturn a decision to deny benefits only when it is unsupported by substantial evidence, or erroneous as a matter of law. *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3rd Cir.1993). Even if the plaintiff's interpretation of the facts is as reasonable as the interpretation adopted by the plan administrator, the arbitrary and capricious standard requires the court to defer to the interpretation of the plan administrator. *Guarino v. Metropolitan Life Ins. Co.,* 915 F.Supp. 435, 445 (D.Mass.1995).

It is undisputed that the language of the medical plan to which the plaintiff subscribes confers upon Metlife the discretionary authority to determine a participant's eligibility for benefits and to interpret the terms of the plan. Therefore, the only question for this Court is whether Metlife's determination to terminate the benefits of the plaintiff was arbitrary and capricious.

---

4. Plaintiff is a participant of the Metlife Options Plus Plan. The plan provides in part: "In carrying out their respective responsibilities under the Plan, the Plan Administrator and other plan fiduciaries shall have discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the plan."

The Court finds that Metlife's determination was based on substantial evidence and is not arbitrary or capricious. Based on the physician reports, progress notes and other medical evidence contained in the claim file that the plaintiff submitted to MetDisability, the plan administrator denied the plaintiff benefits on the grounds that: (1) the plaintiff's socialization skills and judgment were intact; (2) his cognitive and abstract thinking was not impaired; and (3) the plaintiff never submitted information which suggested that the plaintiff was disabled or prevented him from performing the duties of an Account Representative.

After the plaintiff submitted additional reports of his social worker and treating physician in support of his claim to Metlife, the case was subsequently referred to an independent reviewer who affirmed Metlife's denial of benefits. The independent reviewer found, after a thorough review of the additional information provided in the record, that it still "did not support an inability of Mr. Mormile to perform the essential functions of his own occupation from July 13, 1996 onward."

Although the plaintiff contends that the denial of his claim for disability benefits was flawed in many respects, he does not identify in what ways it is flawed. The Court is not aware of any evidence to suggest that the determination of either MetDisability or the independent reviewer was arbitrary and capricious.

Since the Court finds that the determination of Metlife was reasonable based on the evidence contained in the plaintiff's claim file, summary judgment must be granted on Count Three.

*ERISA*

Counts Four and Five of the plaintiff's complaint allege that the defendants' alleged oral promises created a plan governed by ERISA, or an amendment to a plan governed by ERISA, respectively. For the following reasons, the Court finds that ERISA is inapplicable to the alleged oral agreement and will grant summary judgment as to Counts Four and Five.

*Count Four*

■ ERISA defines a pension plan as any fund established or maintained by the employer which provides retirement income to employees, or results in a deferral of income by employees for periods extending to the termination of covered employment or beyond. 29 U.S.C. § 1002(2)(A). A contract between an employer and individual employee providing for post-retirement or post-termination in-kind compensation is not a pension plan within the definition of ERISA. *Jervis v. Elerding,* 504 F.Supp. 606 (C.D.Cal.1980).

■ Construing the evidence in favor of the non-moving party, this Court finds that the alleged promises made by the defendants do not constitute an ERISA plan for the following reasons. First, the alleged promises that the plaintiff might keep his book of business regulate only the plaintiff's relationship to MetLife after he retires, and the extent to which the retiree may interact with former customers. Therefore, it is clear that, at most, the parties entered into an employment contract and did not create an employee pension plan governed by ERISA. *See Laverty v. Savoy Industries, Inc.,* 954 F.Supp. 86, 90 (S.D.N.Y.1997) (ERISA inapplicable to a contested agreement because the agreement's purpose was "to assure the continued services" of the plaintiff).

Second, income is not based on deferral of income, but depends solely on whether the plaintiff makes future sales. Specifically, any income the plaintiff may receive as a result of retaining his book of business would be earned currently from renewals of existing policies and servicing his book of business rather than deferral of past income. Moreover, the possibility exists that under the alleged agreement the plaintiff may never be entitled to receive any income.

Third, the alleged promises do not appear to create a plan with characteristics

normally associated with an ERISA plan. There are no arrangements for placing assets in trust, there are no requirements for the plaintiff to contribute money to any fund to serve as a source of accrued benefits, and there is no administrative scheme for the regulation of fund plans. *Laverty,* 954 F.Supp. at 90.

Because the Court finds that ERISA is inapplicable to the alleged oral agreement it will grant summary judgment as to Count Four.

*Count Five*

Defendants correctly argue that the alleged oral agreement cannot be an amendment to an existing ERISA plan because an amendment must be in writing. *See Smith v. Dunham–Bush,* 959 F.2d 6 (2d Cir.1992). Furthermore, in footnote four of the plaintiff's opposition brief, the plaintiff states: "Count V alleges that the promises to plaintiff constituted an oral amendment to the existing pension plan. Plaintiff does not contest entry of summary judgment on this count." The Court will therefore enter summary judgment against the plaintiff on Count Five of his complaint.

*Pendent State Law Claims*

Having dismissed the federal claims in Counts Three, Four and Five, the Court will decline to exercise supplemental jurisdiction over Counts One and Two pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff's state law claims will be dismissed without prejudice.

## CONCLUSION

For the above reasons the defendants' motion for Summary Judgment [Doc. # 21] is GRANTED on Counts Three, Four and Five. The Court dismisses Counts One and Two without prejudice. The Clerk is hereby instructed to enter judgment in favor of the defendants and to close this case.