Decision on Appeal

McNAMARA, J.
In this Appeal from the Judgment of the Mohegan Tribal Court Roland J. Harris v. Mohegan Election Committee and Members, 10 Am. Tribal Law 379 (2012, Guernsey, C.J.), the Plaintifi/Appellant, Roland J. Harris challenges the Trial Court’s deci *340 sion to uphold the Election Committee’s decision not to allow a candidate to withdraw from the Special Election. It is the Plaintiff’s/Appellant’s position that the Trial Court erred in finding that the Election Committee’s actions were not arbitrary, capricious or in accord with Tribal law. It sought an order vacating the February 4, 2011 decision and an order that a new election for the Tribal Court be held, and an award of attorney’s fees and costs in bringing this action. The Tribal Court held that any error in not notifying the voters of the wish of one candidate to withdraw, if in fact was in error, was harmless. The Trial Court also held that the decision of the Defendant to continue a Special Election already in progress was not arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with Tribal law. We affirm.
PROCEDURAL HISTORY
On March 3, 2010, the Mohegan Tribal Council gave its consent to hold a Special Election following the anticipated resignation of Tribal Council Chair, Lynn Maler-ba. Twelve tribal members declared their candidacies for the Special Election.[1] The candidates were certified as eligible on July 18, 2010 and ballots were mailed to eligible voters on August 28, 2010. The votes in the primary election were counted by the Election Committee on September 16, 2010.
The Election Committee[2] determined on September 16, 2010 that Mike Bozsum and Jonathan Hamilton, Sr. were the top two vote getters in the primary election and that a Special Election for the Tribal Council would be held between Bozsum and Hamilton. On September 23, 2010, ballots were mailed to registered voters of the Tribe listing the two candidates. On October 8, 2010, one of the candidates, Bozsum notified the Election Committee in writing that he would like to withdraw his name from this election.[3]
On October 11, 2010, the Election Committee responded by letter to Bozsum stating “Please be advised that the Election Committee has determined that we cannot withdraw your name from the Special Election, or remove you as a candidate, as you were one of two top vote getters in the Primary for this Special Election, and the Election Code makes no provision for such withdrawal or removal. Therefore, your name will remain on the ballot, and you remain a candidate for the vacated position on the Tribal Council.”
The Election Committee transmitted an email to Tribal members stating that the current Special Election would be held Sunday, October 17, 2010 and that both Bozsum and Hamilton would remain candidates.
On October 17, 2010, the Election Committee determined that there were 367 votes received, with Hamilton receiving 228 votes, Bozsum receiving 124 votes and 15 invalid ballots. Hamilton was declared the winner.
The Plaintiff/Appellant, a Tribal member and registered voter, filed an Administrative Complaint with the Election Committee pursuant to MTC Section 1-215 alleging various defects in its conduct of the *341 Special Election primary and general election. More specifically, he claimed that the Election Committee did not have the authority to reject a withdrawal and that by informing members of the Tribe that Bozsum remained a candidate, knowingly misrepresented the status of the candidate in violation of Election Code Section 1-207(e). He also claimed that the Election Committee interfered with the free exercise of voters’ right to vote, interfered with the right of prospective candidates’ right to run or not to run for office and failed to ensure that the proper number of candidates were running in the Special Election Committee. The Election Committee considered each alleged violation and concluded that no probable cause existed, and dismissed the Complaint.
Harris appealed the decision of the Election Committee to the Mohegan Tribal Court. The Trial Court decision initially addressed the question as to whether Harris had standing to bring the appeal from the Election Committee. The Defendant had claimed that Harris lacked standing because he had not alleged that he voted, or that he was deprived of an opportunity to vote in the Special Election and he was not a candidate in the election. The Defendant did not argue that the Plaintiff had no standing to file the Complaint, but rather that he had no standing as an aggrieved party to appeal from the dismissal of his complaint. The Trial Court held that Harris, as a Tribal member with voting privileges had standing. It held that a decision of the Election Committee adverse to a party’s complaint is sufficient to confer standing to appeal pursuant to MTC Section 1—217(c). The Court further held the language of MTC Section 4-217(c) confers the “right to appeal a decision of the Election Committee” and does not specify that such decision be rendered after a hearing.
As to the appeal itself, the Trial Court first examined the actions of the Election Committee. At the time of Bozsum’s attempted withdrawal, the election not only had been commenced within the statutorily mandated period,[4] but ballots had been distributed to the Tribe’s registered voters. The Court reasoned that the Election Committee was faced with a situation for which the Election Code offered no guidance. The Court stated while perhaps it could have followed Conn. Gen.Stat. § 9-150a(j),[5] or followed procedures utilized in an earlier election for the Council of Elders,[6] the Court determined that had the Election Committee notified the voters that Bozsum had withdrawn, the outcome of the election would have been the same. *342 It reasoned that any error in not notifying the voters of the candidate’s wish to withdraw, if in fact was in error, was harmless. Of significance to the Trial Court was the agreement of all parties that there was no collusion or improper motive in the decision of Bozsum to withdraw from the general election, and that a candidate’s good faith attempt to withdraw his candidacy was not an Election Code violation. The Election Committee’s authority to order a new election pursuant to MTC § 1-216(e)(2) was therefore not pertinent.
The Trial Court further held that the actions of the Election Committee allowing the election to continue after the withdrawal of one of the candidates was not arbitrary, capricious, or abuse of discretion, or otherwise not in accordance with Tribal law. This appeal followed.
DISCUSSION
The Plaintiff argues that the Trial Court erred in finding that the Election Committee’s actions were not arbitrary, capricious or in accord with Tribal law. He concedes that at the time of his complaint to the Election Committee, there was no provision of the Election Code that explicitly addressed withdrawal from a general election.[7] He argues that the absence of an express provision governing withdrawal did not prohibit the Committee from sanctioning Bozsum’s withdrawal, just as no provision of the Election Code authorized the Committee to respect Bozsum’s withdrawal. This argument acknowledges that the Election Committee could have allowed Bozsum’s withdrawal. The Election Committee was faced with a decision with no controlling Tribal law.
The Election Code establishes the standard of review of the Election Committee’s decisions. Pursuant to the Election Code, the Committee’s decisions “shall not be overturned unless the Trial Court finds the decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with Tribal law.” MTC l-217(c).
Arbitrary and capricious is determined if the decision is unsupported by substantial evidence, or erroneous as a matter of law. Mormile v. Metropolitan Life Ins. Co., 91 F.Supp.2d 492 (D.Conn. 2000).
The Election Committee could have followed Conn. Gen.Stat. § 9-150a(j) which deals with the withdrawal of a candidate after the distribution of absentee ballots:
(1) in the counting of absentee ballots, the intent of the voter shall govern, provided the following conclusive presumptions, where applicable, shall prevail in determining such intent.
(2) If the name of a candidate who has vacated his candidacy is checked such vote shall not be counted.
If the Committee had utilized Conn. Gen.Stat. § 9-150a(j), the outcome would have been the same. Bozsum’s votes would not have counted and Hamilton would have been declared the winner with 228 votes.
The Election Committee could also have followed the procedure utilized in the Council of Elders’ election in 2006.[8] In *343 said election, a candidate withdrew as a candidate after the ballots were printed. In the June 14, 2006 Official Tribal Newsletter Wuskuso, the Tribal Election Committee asked voters not to select his name on the ballot. The Plaintiff argues that the Election Committee was obligated to inform the registered voters of the Mohegan Tribe of such withdrawal and conduct a Special Election. While an e-mail blast, or an article in the New London Day may have informed some of the voters, there is no guarantee that all of the voters would have received notice. The Election Committee mailed official ballots containing the names of the two candidates on September 23, 2010 to eligible voters. Voters were able to cast and return their ballots upon receipt, either by mailing the ballots or by dropping the ballots in a ballot box at the Tribal Government entrance lobby. The Election Committee did not receive the resignation letter from Mr. Bozsum until October 8, 2010. Eligible voters had already had two weeks to cast their votes prior to the Election Committee having knowledge of Bozsum’s requested resignation. In fact, several ballots had been returned. There was no authority for the Election Committee to suspend the election and commence another election process. While the Election Committee could have attempted to notify the remaining voters of Bozsum’s resignation, the outcome of the election would not have changed. Had the Election Committee followed the procedure utilized in the June, 2006 Council of Elders Election, voters would have been informed not to vote for Bozsum, and Hamilton still would have been declared the winner.
The Trial Court concluded that any error in not notifying the voters of Bozsum’s withdrawal was harmless. This Court Agrees.
The harmless error standard in a civil case is whether the improper ruling would likely affect the result. Urich v. Fish, 261 Conn. 575, 580-81, 804 A.2d 795 (2002). To be harmful, an error must be so fundamental and material that it may work injustice. Bell v. Bihary, 362 A.2d 963, 168 Conn. 269 (1975).
In the case at bar, the registered voters of the Mohegan Tribe elected the candidate who would have prevailed even if the Election Committee accepted the resignation of Bozsum. In accepting his resignation, the election would have resulted in Hamilton’s victory by default. Similarly, had the Election Committee declined to count votes cast for Bozsum, the result would have been the same. Hamilton would have prevailed in the election even if the Election Committee had either accepted his resignation or notified all Tribal registered voters that he was no longer a candidate. Any errors by the Election Committee in handling Bozsum’s withdrawal were harmless.
The Trial Court properly acknowledged that the Defendant was faced with a difficult decision on an issue not addressed in the Election Code and correctly held that its actions were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with Tribal law.
The Judgment is affirmed.
In this decision MANFREDI, J. and EAGAN, J. concurred.

.The candidates for the position were Mike Bozsum, John L. Chapman, William F. Done-hey, Jonathan S. Hamilton, Sr., Sarah Harris, Jay Ihloff, Ken Janus, Debra Maxeiner, Connie E. McIntyre, Christine Murtha "Micim-mi”, Ronald Strickland, and Shirley M. Walsh.

. The Election Committee is appointed by the Tribal Council "to conduct elections" MTC Section I—201(a).

. Letter of Michael A. Bozsum to Election Committee dated October 6, 2010.

. MTC Section 1-210 requires that a special election shall be on a date within sixty days of the vacancy.

. (i) Write-in votes (1) Except as otherwise provided in this section the provisions of section 9-265 shall apply to write-in votes on absentee ballots at elections.
(2) Votes cast by absentee ballot at a primary may be counted only for candidates whose names appear on the ballot on primary day, and no write-in vote shall be counted except as provided in subdivision
(3) of this subsection.
(3) If a write-in vote on an absentee ballot is cast for a candidate for any office whose name appears on the ballot for that office on election or primary day, such candidate’s name shall be deemed to have been checked on such ballot and, except as otherwise provided in subsection (j) of this section, one vote shall be counted and recorded for such candidate for such office.
(4)Except as otherwise provided in section 9-265, if the name of a registered write-in candidate for an office is written in for such office on an absentee ballot it shall be deemed validly written in for purposes of subsection (j) of this section.

."In Re: 2010 Special Election to Fill one Vacancy on the Tribal Council” Wuskuso, Volume 11, Number 23, June 14, 2006.

. This has been remedied by amendments to the Election Code enacted Resolution No. 2011-27, adopted by the Tribal Council on April 20, 2011.

. The plaintiff had filed a Motion to Present Additional Evidence to the Tribal Election Committee and a Motion to Supplement Record. Plaintiff wished to present additional evidence to the Tribal Election Committee in the matter of “In Re 2010 Special Election to Fill One Vacancy on the Tribal Council” in the form of an article from Wuskuso, Volume 11, Number 23, June 14, 2006. The Trial Court denied said Motions; however it per *343 mitted the plaintiff in his trial brief to refer to the actions of the Election Committee in the 2006 primary election for the Council of Elders as reported in the Wuskuso article.